We have six cases on the calendar, three patent cases, two employee cases and a veterans case. And one of each is being submitted on the briefs and is not being argued. So we have three argued cases, two patents and one employee. The first patent case is Trading Technologies v. Espeed, Ecoware, et al., 2013-92. And Mr. Bossand.  On the term static, the court below here, because rather than simply using the express definition in the patent, they reached a conclusion that altered that definition. The court first there, by improperly importing the word manual into the unless clause in the definition in the statute. Is there anything else, though, other than static and controlled manually in the specification? Is there any other examples? Yeah, anything other than what's static or manually changed. Later in the patent, there's an example of manual recentering given, but the patent does not say that recentering must be done manual. It doesn't say that the invention is or requires manual recentering. And none of the intrinsic evidence disavows or disclaims manual recentering. And, in fact, the applicants never distinguished any prior art based on it. The test doesn't disavow. The test is disclosure. And if the whole application is manual and static, then that's what the terms of the claims mean. No. The recentering feature is a feature actually claimed in dependent claims in the patent. The patent talks separately in the definition about static. It never requires that it be static all the time, or that the only way that the price levels can change positions is as a result of a manual command. There's simply no- Counsel, looking at column 8, down about line 51 through 56, doesn't it talk in terms of the present invention, which is normally taken to be the whole invention, not just a mere embodiment, addresses this problem with a one-click centering feature, and then goes on with a single click. And then, when you get into the embodiments, every single embodiment in the specification that I could find in both patents talks about the one-click or a-click or some manual. So what else is the trial court to do other than say, this is everything that's disclosed, all the embodiments plus the present invention are described this way, what other claim construction could be reached? Okay, well, the language you're referring to is talking about the feature of recentering, and it starts off saying the present invention addresses a problem of the market going off the screen. And then it goes on and gives an example of manual recentering. It doesn't say the present invention is manual recentering, like has been found in some other cases, like the Honeywell ITT case. But isn't that the problem, the central purpose was to have that static? In other words, the whole problem was when the thing goes off the screen in the old art, you might, or if it starts to move, you might click at the wrong time and get the wrong price. Wasn't that the whole idea of having this static? Actually, there are several problems addressed, and it's a little different than that. If I can explain, the patent focuses on figure two as an example of the prior art. In figure two, every time the market changes, the price levels and the best bid and best ask sales change every time. So if a trader was trading and the market's going up and down, every single time the market changes, if they click at that moment, they're going to miss the price. One of the problems addressed by the patent was to improve upon that, to provide more order accuracy, not to provide a 100% guarantee of order accuracy like the court found the purpose was. That's simply not stated in the spec. So the problem of recentering is a whole different issue. You only have the issue of needing to recenter if you're static in the first place. You keep the prices still, the market moves away from the center of the screen, and then you may need to recenter. Figure two, the prior art discussed in the patent, is all recentered. The market never moves off center. If you take a look at figure two of the patent, that's kind of critical to understand the problem addressed in the patent. The labels, if you look in the cells labeled 203 and 204, that's basically where the inside market is displayed. Best bid price in 203, best ask price in 204. Every time the market changes, those numbers flip out in those cells. The market's never moving up and down. So the problem addressed by the patent was making something better in that respect than figure two, which, of course, having automatic recentering doesn't conflict with that at all. You can't even have any recentering unless you're static in the first place. The claim language, however, says specifically that the static display does not remove in response to a change in the inside market. How does that affect automatic recentering? So you're referring to the where-in and such? Yeah, the where-in clause says that it's not moving in response to a change. The where-in clauses say where the price levels do not move in response to or when the market changes? Yeah, doesn't that suggest an entirely separate reason that automatic recentering is not within the scope of the claimed invention? No, actually, I think the where-in clauses show that our construction has to be right. The where-in clauses don't say in there that that always has to be the case. The where-in clauses say, basically, that there needs to be a time when the price levels don't change positions when the market changes, which is true of all the accused products. In figure two, that is never true. Every time the market changes, the price levels change positions. That was the priority that was being distinguished. The where-in clause doesn't include any restriction against manual, any disclaimer against automatic recentering. Well, let me follow up on Judge Rader. Every single independent claim, I believe, in the patents has that where-in, the static display of prices does not move. Now, I suppose a trial judge might have said, that language is already in the claims. I don't need to include it in the definition of static because it's already there. But how does that help you when every single claim has it anyway? Well, the where-in clause does not say the price levels always do not move. That's not in there. That's not anywhere in the patent. The where-in clause is merely stating the intended result of the previous recited features. The claim is talking about juxtaposing the static prices, dynamic indicators relative to static prices. When you do that, the market updates are coming in from an exchange. When the market changes, there will be times when the prices do not move and the bid and ask indicators move up and down relative to it. Can you cite us to anywhere in the claims or the specifications of an example of what you're talking about? As I said, I believe I'm correct. Every independent claim has that where-in in there, which means it also translates into all the dependent claims. And it talks about the static display. Where-in, the static display does not move. So whether static is defined that way or the claim language is what makes it, the judge has just repeated himself in his definition. How does that help you? The problem with the judge's definition was precluding auto recentering, which is not precluded by anything in the claims, including the where-in clause, and also incorporating the concept that the prices can never move, or in other words, that always the price levels do not change positions unless there's a recentering coming on. That's not in the where-in clause. In fact, the where-in clause is in conflict with that. And I'll also point you to, obviously, we have claim differentiation here. We have dependent claims, claim 24, for example. We have an express definition, static. That is, they do not normally change. What's normally mean in this context? Normally, that's interesting. The court also left that out of its construction. We believe, and it really hasn't been disputed or fought in this case, that normally means it's normal and ordinary meaning of the usual and expected state. It may not even, the ESPYS expert early on in the Markman case basically said he understood that term. So it's not going to move unless a recentering command is received. And yet, the only way the spec tells us that that is received is manually. The only example given in the patent is the way it triggered the recentering command is manual. But that is a feature claimed in dependent claims, like claim 24, claim 24. The independent claim doesn't even require, you don't even need to do any type of recentering to meet the terms. Is the passive voice normally is received broad enough to encompass automatic recentering in your mind? Absolutely. I mean, a command can be received, a recentering command can be received from a person or a computer. The passive voice doesn't change that at all. Didn't you remove normally from some of the claims? Normally is not in any of the claims. It's in the definition in the spec. ESPYS did argue that they claimed that we, I think the word they used was jettison normally during the prosecution history. That is not true. One time in the prosecution history. Did you argue without the word normally there? We summarized it without, but we cited to the very lines of the spec that had the words normally in there. And the court did properly find that that argument, there was no argument based, estoppel based on that. He didn't think we were making any clear disclaimer by not using the word normally in a summary, especially when we were referring to the lines of the spec that had the word in it. You wanted to save six minutes. Yes. You can save it for later or you can use now as you wish. I guess I would just quickly summarize and then leave. The other here, in addition to putting manual, I think the court made two errors. Even if one wasn't properly put manual into the definition, which you should not do, the accused products would still infringe part of the time because they have modes in which the price levels do not change positions except for manually. But the court furthered, and this here is not in its stated construction. It's in its rulings. It said that a static precludes any possibility of auto recentering. In other words, to be in a static condition, the price levels always do not change positions unless there's a recentering command. There's no support for this extra always or what he referred to as this never limitation in the claims. It's not in the claims. There's no disclaimer disavowal. No prior art was distinguished based on it. Other claim language like the wearing clause and dependent claims show it's wrong. So we think the facts are very similar to the recent Gemtron case on that point where this court refused to put the word always into a claim when there was no support for doing so. And with that, I think I'll try to save the rest of my time for the ball. I will save it. Mr. Rosen, you have put your own brief to defend the judgment, but you have a cross appeal. It's not labeled as a cross appeal, but it changes the judgment, and you had a lot of issues. So you can decide how you'll allocate your time. If you want to save for the other issues, then you've got to save that time. What I intended to do, Your Honor, if it meets with the court's approval, is to make a few general observations about the claim construction issue that Mr. Borsan just focused on, and then move on to the cross appeal issues. And then we reserved three minutes for Sir rebuttal just on the cross appeal issues. In other words, your argument won't be static. I hope not. Can you ignore my body of posture, I hope? This is pretty reminiscent of the Phillips case, isn't it? Where a dependent claim, only in this case you've got three dependent claims, which point out that the independent claim must be broader than the dependent claims, which show manual recentering. How do you get around that? Which is precisely what happened in Phillips, and the en banc court reversed, basing its judgment largely on that point. Well, I don't understand that claim differentiation argument as being the same kind of claim differentiation addressed in Phillips or in Gemtron, or an example, really, of what this court talks about as claim differentiation. T.T. is arguing that three dependent claims, parallel dependent claims, each of which comes from a different claim set. 24, 34, 44. But they're uniform. I mean, every independent claim thereby is shown to have a broader meaning than manual recentering. Well, Your Honor, I think the difficulty is that there's a little bit of a misframing of the issue here. The issue is not a question of reading in a narrow limitation into a broad claim term. The issue really is what exceptions does a narrow claim term, static display of prices, permit? And I think if you follow that logic, you then have to say, well, T.T. chose the adjective in question, static. It's really a binary term, not a term of degree. The intrinsic evidence, which was discussed in some of the questioning just now, shows that a static display of prices is critical to providing the key advantages of the invention. But the trouble with the argument you're taking us down now is that they then specifically define static, and we all understand you can define black to be white, and they do in this case. They define a unitary term, as you say, with a broader meaning. They say it doesn't normally change unless there's a recentering command received. Well, Your Honor. And that suggests that it's going to be received, a centering command, and then we are asking ourselves, well, what kind of a centering command? Because it's in the passive voice and doesn't tell us, and we find out that they have dependent claims that say it can be manual, so evidently the independent claim is broader. Does it encompass automatic? I think, Your Honor, and I believe. Why wouldn't it encompass automatic? I mean, the logic's pretty simple here. Mr. Borsan, I think, alluded to this. The independent claim does not call for or require any form of recentering. As defined in its explicit definition, static normally does not move unless a recentering command is received. So it does include recentering. As defined, it includes recentering. So we're past that. The question is how does it recenter? Well, I think, Your Honor, your questioning alluded to the point that the way this is phrased, command is received, we think, suggests an input. And I think, Your Honor, if you look at this in its entirety, it never, never drills down to the level of computer code and computer instructions. Well, but the question, you still aren't helping because, yes, there's going to be an input. Is it going to be manual? Yes. One dependent claim tells us it's going to be manual. Then what is broader than that? Could it be automatic? Your Honor, I don't think the independent claim can possibly be read to encompass automatic. Why not? Because it specifically excludes it. Where does it explicitly exclude it? It's the language Your Honor quoted a few moments ago. It says it does not move. In the claim language, not the spec, in the claim language, the static display of prices does not move in response to a change in the inside market. Yeah, I couldn't remember the word static, which occurs in the where-in clause as well, has been defined in a way that says it's static, but it moves when you receive a recentering command. And they can do that. That's the rule. Lexicographer, you can redefine black to be white. You can define static to say except when it moves. And they did. Now how does it move? It's interesting, Your Honor, that although they have that definition of the specification, that's not the construction they asked for in the district court. And I think the reason they didn't ask for that construction in the district court is because when you look at the patent in its entirety, and some of these portions were referenced by Judge Clark, again and again it talks about the embodiments are manual. It describes the present invention as allowing for manual recentering. The purpose of the invention is to prevent order entry errors. But you haven't helped me with my problem that the claims suggest a broader meaning in the independent claims because there's a dependent which recites manual. So what is broader than manual? Your Honor, again, the independent claim recites a static display of prices. And it goes on to say that display does not move in response to a change in something, which is exactly what order recentering is. We're going in circles here. Static, however, has been defined. You can't get out of the definition they've given. So how do you get around the dependent claim? First of all, Your Honor, the definition they've given, we think implicitly talks about manual recentering. The definition was upon receipt of a command. If you look at those three dependent claims, one talks about receipt of a command from a user. The others talk about slightly different verbiage. But they're all talking manual. And what they do is they narrow the independent. Actually, that's one of the questions I had. Claim 44 says upon recentering instruction from a user. The others two just say upon receipt of a recentering instruction. Doesn't that imply a difference there, that in one case it's from a user putting in a manual command? The other two may be something else. I don't think so, Your Honor, because if you look at the language, there's another difference in the language. The two that don't say from a user use the word receipt, whereas the one that uses the word from a user does not use the word receipt. So you have two that say upon recentering instruction, or upon receipt of a recentering instruction, and one that says upon recentering instruction from a user. I think the problem ultimately with the approach that TT wants to take is, and the district court noted this, is there's no logical stopping point. At the end of the day, and I think most of where Stan alluded to this, all they say is static means not figure two. Well, that's not the way claim construction can work. Perhaps you are entitled to claim as broadly as a particular piece of prior art allows, but you have to actually disclose and claim it, and they didn't do that here. And what they want to do is water down the word static, the binary term that they chose. That is the feature that prevents the rug from being pulled out from under you. That's what they illustrated to the jury in the exhibit at the bottom of page 12 of the red brief, which is reproduced from the appendix. This is what a static display of prices is. It's one that you don't miss the price when the market changes because it stayed static. That was the key to the invention, and what they want to do is water down the word static to the point where it has no meaning, and put the burden to say, well, that word had no meaning. You find limitations in the specification because static by itself meant nothing. Our position is static means something. It has a presumption of motionlessness, and then the claim language goes on and specifically excludes automatic recentering. The independent claims then permit manual recentering. Now, I would, if there are no other questions on the claim construction issue, I would like to spend some time on the cross-appeal issues. This is not a case, Your Honors, where the time bars of Section 102B will work as an unfortunate trap for the unwary. Mr. Brumfield made a... Let me ask you about that. Brumfield is one of the inventors. How can, when you've got an inventor who has the germ of an idea and goes to two other people who are named as inventors and they work on it, how can that be an on-sale bar, even if some money exchanges hands? Well, actually, the representation made by T.T. in their brief is that the others made no contribution until like a year later, sometime after the critical date. So I don't think that is an issue, Your Honor. I think what's interesting is, since the Pfaff case, 10, 11 years ago, which was kind of animated by a concern for simplicity and predictability on on-sale, this Court's taken a very, I think, black letter, black line rule to what's a sale. A transfer of an embodiment, an agreement to transfer an embodiment of invention from one entity to another for consideration is a sale. But wasn't this in the context of experimental use? Well, Your Honor, Developing a product. First, let's raise the issue. The issue would be, was the purpose of the sale experimental? And then second, where was the burden of proof on that? And I think the burden of proof was on T.T. And what the evidence shows is that as soon as Mr. Brumfield took delivery and paid for this, he wasn't experimenting, he was trading in a very profitable Why is the burden of proof on T.T.? Until the issue has been raised, then the burden shifts. Well, Your Honor, we raised the on-sale bar issue. We believe the record as it stands, even though we were never put in our case in chief, establishes a sale and the ready for patenting prong. They, on appeal here, raised the defense of, well, it was experimental use. And I think in that, they have the burden of going forward there. And they've really come forward with nothing. If experimental use were an exception, but of course it's not in our law. It's a negation. It's a negation, meaning that the burden always remains on you to prove a public use. They can negate that if they come up with sufficient evidence of experimentation, but always the burden is on you to prove a public use, because that's the only question that is ever before the court, whether there's a public use. There's no such thing as a separate experimental use doctrine. There's only public use and a negation of public use with sufficient evidence. I agree with that statement of the law. Let me, just in the few seconds I have before I get into my rebuttal, first let me distinguish the public use and the on-sale. With respect to the on-sale, the sale took place September 1998. It was ready for patenting by the critical date. We know that because the software was completed and delivered. I think under the robotic vision standard, there's no question it was ready for patenting by the critical date. At that point, I believe, Your Honor, it was their burden to come forward with the negation, evidence of the negation. Perhaps in the end, the ultimate burden of persuasion would be with us, but I think they had that burden to come forward, which they have not met, and that's argued in the brief. Separately, Your Honor, with respect to the public use, there the district court had a hearing and made a finding that during that intervening period between the two critical dates, the provisional and the non-provisional, and this was based on video evidence and Mr. Brumfield's own admission, he was trading to make money during that period. So that's not an experimental use either. If there are no other questions right now, I would like to reserve the remainder for rebuttal. We'll save it for you, Mr. Rosen. Thank you. Mr. Bosand. Okay. I'd like to quickly address the on sale. First of all, E-Speed admitted there was no sale and they can't get around this. In response to uncontested statements of fact and a summary judgment motion on public use, they admitted, quote, the product and body and the patent and invention was not sold before June of 1999. That's at 32-733 of the appendix paragraph 12. It's a binding admission under Seventh Circuit law. They have not explained it. They haven't denied it. That should end the issue. Let me come back to our central issue with you and the one issue we didn't discuss last time that seems to give you trouble. You've got an explicit definition, but we haven't talked about the parentheses. You say the command is going to be received, and you say we'll discuss that in detail later, and the only thing you discuss is manual. So why doesn't your definition read in a single way of doing it, manual recentering? A couple of things. The discussed in detail later follows the definition of static. Static is, and we have that definition. Yeah, you've defined it. You said sometimes it won't be static because it'll recenter, but then you say, you promise us, we're going to tell you how we do that. It's later, and the only thing you tell us is manual. Well, a couple of things. First of all, I think the discussed in detail later is generally referring. I would have hoped to have heard that from him. It's generally referring to there's more discussion of static, period, later. This patent goes on. That's not the only discussion of static, that one line. In detail, it discusses static vis-à-vis figures 3 and 4 of the patent and says you can see static by looking at figures 3 and 4, and it gives the example of the market changing between time 1 and time 2, and you can see prices stay still, market went up. That's some of the detail later. Also later, there's an example given of manual recentering, but I think we're missing something, or East is missing something here. The invention is not recentering, and the invention in some dependent claims covers recentering, but this invention is not all about recentering. The independent claims don't even require it, and one other thing I want to point out is the court, one of the main things I think that got the court off base here was it started off with dictionary definitions, looking at the ordinary meaning of static, which is motionless, but it presumed that the ordinary meaning means motionless all the time. That's not even in the dictionaries. That isn't the ordinary meaning of static. The ordinary meaning of static is it's a transitory condition. I can look at something. Is it moving now? No. I don't concern myself if it may or may not move later, so it immediately started with extrinsic, but even a too narrow view of those extrinsic definitions, and then improperly found that the purpose of the patent was to guarantee 100% of order accuracy. Not only does the patent not say that, and there would need to be a clear statement on something like that, it says the opposite. It says the invention is looking to improve on figure two, increase the likelihood. Let me ask you one other thing, just in the spirit of honesty here. This went through a long trial. Absolutely. Why wouldn't I defer a bit to the district judge who sat through that and heard every bit of evidence and weighed it all? Why don't I think his Markman construction deserves a great deal more credibility than my quick reading of the briefs? Sure, that's a fair point. Even though it's been overreviewed, it's a fair point. I think here the court itself, this is the one issue in the case where the court itself recognized this was a tough issue. In fact, it originally sided with T.T. We don't think it's tough, but the court originally sided with T.T. and then changed its mind. It often referred to itself as merely a way station on the way to this court, even said in some of its opinions. And I think the evidence is clear that the court just got it wrong here on this. And I think part of the reason the court got it wrong was highlighted by something Mr. Rosen said. The court got led astray by Eastby showing to it all these unrealistic hypothetical scenarios and trying to say, well, boy, maybe this construction of static may cover something that only de minimisly infringes. And the court really got concerned with that. It says in its opinion, quote, you know, the issue is do I preclude an unrecited feature, auto recentering? I don't know, quote, where to stop. The court shouldn't be concerning itself with infringement, hypothetical infringement, and damage issues, de minimis infringement is a damage issue, in its claim construction. And what happened was it gave a construction, talk about more realistic scenarios, it gave a construction in which static won't even cover a screen in which there's a one in a million chance of an auto recenter. And I think that goes against common sense. Let me ask you one more question, counsel. You've got the normally in the specification, but during the discussion with the examiner, wasn't there a statement in there, and this was actually discussed in the briefs in dealing with estoppel, but I was looking at it in terms of original claim construction, and they respond to the examiner, the values do not change position. No qualifiers like normally, no nothing, it's just do not change at all. So why didn't that lend some support to the other analysis on static? You know, Eastby pointed to that in his brief, and that argument confused me, because price levels do not change positions. That doesn't say we're disclaiming auto recentering. That doesn't say this always has to be the case. The patent is talking about providing a condition in which this is true. And it is a broad term. Figure two of the patent has the price levels always changing positions every time the market changes. If someone wants to design a screen that's designed to have a situation in which the price levels don't change positions when the market changes, even if they want to do it just one brief time, they're choosing to meet the static limitation. And by the way, you know, this is not a controversial thing. Eighteen companies in the industry have settled on this. They've recognized these companies are either paying royalties if they want to do the invention, and they've recognized that auto recentering. We have your argument, Mr. Borsan. Your time has been consumed. Thank you. Mr. Rosen has some rebuttal time on the cross-appeal. Yes, and I think the only portion of the cross-appeal that was referenced in Mr. Borsan's argument was respect to the sale. So I'll limit myself very quickly to that, Your Honor. First, there was no admission of no sale. As set forth in the reply brief of TT, they divide their business into a consulting business and a product business. There's never been any dispute that the transaction here was on the consulting side, not the product side, and that's what that related to. I think, Your Honors, if TT were an interior design consultant and the deliverable had been a desk that Mr. Brumfield couldn't build for himself, and they had sent a carpenter to his office and built for that on a time and materials basis, I don't think anybody would have any doubt that was a sale of a desk. And we don't think there's any exception for software, computer systems, consultants. This Court has rejected all forms of exceptions from a very simple approach to what's a sale. If there are no other questions, I think that's all the range I have for rebuttal. Thank you, Mr. Rosen. The case is taken under review.